JOSEPHINE KRAWCZYK ET AL. *v.*
KATHLEEN D. STINGLE ET AL.
(13313)
(13314)

PETERS, C. J., CALLAHAN, GLASS, COVELLO and HULL, Js.

240

Argued May 5—decision released July 12, 1988

*Patrick J. Flaherty,* with whom, on the brief, were *Kenneth P. Namnoum, Jr.,* and *Lorinda S. Coon,* for the appellant-appellee in the first case (defendant Trantolo and Trantolo, P.C.).

*Joseph T. Sweeney,* for the appellant in the second case (named defendant).

*Peter N. Upton,* with whom, on the brief, was *Ellen A. Conway,* for the appellees-appellants in the first case, appellees in the second case (plaintiffs).

PETERS, C. J. The dispositive question in this appeal is whether an attorney's negligent failure to arrange for timely execution of estate planning documents permits the intended beneficiaries of the estate to pursue a cause of action for legal malpractice. The plaintiffs, Josephine Krawczyk, Stella K. Rabiega, Genevieve Krawczyk, Helaine Kania, Francis Krawczyk, Edmund Krawczyk and Henry Taylor, relatives of the decedent, Joseph C. Krawczyk, brought suit against the defend-

ants, Kathleen D. Stingle and Trantolo & Trantolo, P.C., for legal malpractice. The gravamen of their complaint was that the defendants, who had been engaged by the decedent to prepare documents for the disposition of his estate, had been negligent in failing to provide them to the decedent for execution prior to his death. At the conclusion of the plaintiffs' evidence and again at the conclusion of all the evidence, each defendant filed a motion for a directed verdict, which was denied. After trial, a jury returned a verdict for the plaintiffs, awarding them $65,000 in damages. Each defendant thereafter filed a motion to set aside the verdict and for judgment notwithstanding the verdict. The trial court denied the motions and rendered a judgment against the defendants in the amount of $65,000, from which they appeal. We find error.[1]

The record discloses the following undisputed facts: On the afternoon of Tuesday, March 8, 1983, the plaintiffs' decedent met with the defendant Stingle, who was then associated as an attorney with the defendant Trantolo & Trantolo, P.C. At the meeting, the decedent informed Stingle that he was soon to undergo open heart surgery and that he wanted to make arrangements for the disposition of his estate. The decedent named his daughter, his mother and several of his brothers and sisters as the intended beneficiaries of his estate. He also indicated that he did not want his estate to go through probate. Stingle recommended that he create two trusts that would hold the ownership of his real estate and bank accounts during his lifetime for the benefit of the persons he designated. Although Stingle explained that using a will would be less expensive and would entail fewer steps, the decedent reiter-

[1] The plaintiffs cross appeal from the trial court's denial of their motion to set aside the verdict as to the issue of damages and for an order of additur. Our conclusion that under the circumstances the defendants owed no duty to the plaintiffs renders consideration of the cross appeal unnecessary.

ated his desire to avoid probate. Accordingly, the two agreed that Stingle would prepare trust documents for the decedent to sign the following Tuesday. Stingle informed the decedent that, in order to complete these documents, she would need additional information prior to the next meeting. Accordingly, she provided him a list of the required items, which included the names of his banks, his bank account identification numbers and a legal description of his real property.

On Friday, March 11, 1983, when the decedent delivered some of the necessary information to Stingle's office, Stingle's secretary explained to him what other documentation was still required for the completion of the trust instruments. The decedent did not, however, deliver the additional information until the scheduled meeting of Tuesday, March 15. As a result, the trust documents were not ready to be executed at that time. Stingle and the decedent accordingly agreed to meet the following Saturday, March 19, to execute the documents. During the course of the March 15 meeting, the decedent instructed Stingle to delete one of his brothers from the trust instruments and to make some further alterations.

On Thursday, March 17, 1983, Stingle received a phone call from the plaintiff Genevieve Krawczyk, the decedent's sister. Genevieve Krawczyk informed Stingle that, because the decedent had suffered a massive heart attack and was in the intensive care unit at Hartford Hospital, the decedent would be unable to keep his appointment for that Saturday. Stingle did not inquire further as to the decedent's condition nor did she proceed, after the conversation, to complete the trust instruments.

The next afternoon, Stingle received another call from Genevieve Krawczyk, who told her that the decedent was very ill and instructed her to bring the trust

instruments to the hospital. Stingle spent the next two hours completing the preparation of the documents. Upon her arrival at the hospital, however, she was informed by a physician that she would be unable to see the decedent due to his deteriorating condition. He died shortly thereafter without having signed the documents.

During trial, the plaintiffs called James R. Greenfield, an attorney, as their expert witness to testify concerning the appropriate standard of care. In his view, Stingle's conduct had deviated from the appropriate standard on two occasions: During the phone conversation of Thursday, March 17, Stingle should have inquired whether the decedent was in any condition to sign the documents and whether it was possible for her to come to the hospital to have him execute them; and after the conversation of Friday, March 18, she should either have brought hand-written documents to the hospital for the decedent's signature or alternatively have prepared a simple will that she could have presented to him for his immediate signature.

The defendants' expert witness, attorney William H. Wood, Jr., testified that Stingle's conduct conformed to the standard of care ordinarily required of an attorney under the circumstances. On the question of causation, he testified that implementation of the trust plan would have required further steps to be taken subsequent to the execution of the trust instruments themselves. Furthermore, he emphasized that an attorney had a duty in preparing estate planning documents to make sure that his or her client understood their meaning and legal significance.

On appeal, the defendants claim that the trial court erred in: (1) denying their motions for a directed verdict and for judgment notwithstanding the verdict because under the circumstances the defendants did

not have a duty to the plaintiffs; (2) denying their motions for a directed verdict and for judgment notwithstanding the verdict because there was no evidence that Stingle's conduct caused the plaintiffs' alleged losses; and (3) refusing to charge the jury that expert testimony was necessary to prove causation. In addition, the defendant Trantolo & Trantolo, P.C., argues separately that the court erred in allowing, over objection by the defendants, a hypothetical question propounded to the plaintiffs' expert. Because we agree with the first ground for reversal raised by the defendants, we need not consider the others.

At the outset, we note the appropriate standard of review. In considering the trial court's denial of a motion for directed verdict, we view the evidence in the light most favorable to the prevailing party. *Mather v. Griffin Hospital,* 207 Conn. 125, 130, 540 A.2d 666 (1988). Nevertheless, a verdict will be set aside and judgment directed " 'if we find that the jury could not reasonably and legally have reached their conclusion.' " Id., quoting *Bound Brook Assn.* v. *Norwalk,* 198 Conn. 660, 667, 504 A.2d 1047, cert. denied, 479 U.S. 819, 107 S. Ct. 81, 93 L. Ed. 2d 36 (1986). If, as a matter of law, the defendants did not owe a duty to the plaintiffs under the circumstances of this case, then the trial court was required to direct a verdict in the defendants' favor.

As a general rule, attorneys are not liable to persons other than their clients for the negligent rendering of services. A number of jurisdictions have recognized an exception to this general rule when the plaintiff can demonstrate that he or she was the intended or foreseeable beneficiary of the attorney's services. *Mozzochi v. Beck,* 204 Conn. 490, 499, 529 A.2d 171 (1987); see 3 F. Harper, F. James & O. Gray, The Law of Torts (2d Ed. 1986) § 18.6, pp. 725–32; R. Mallen & V. Levit, Legal Malpractice § 80, pp. 156–60, and § 622, pp.

778–82. An attorney alleged to have erred in the preparation of a will may be held liable to the intended beneficiary of the will under either a tort or a contract theory of liability. *Stowe* v. *Smith,* 184 Conn. 194, 199, 441 A.2d 81 (1981). Accordingly, courts have held that the intended beneficiary has a cause of action against an attorney who failed to draft a will in conformity with a testator's wishes; see, e.g., id.; *Lucas* v. *Hamm,* 56 Cal. 2d 583, 364 P.2d 685, 15 Cal. Rptr. 821 (1961), cert. denied, 368 U.S. 987, 82 S. Ct. 603, 7 L. Ed. 2d 525 (1962); *Needham* v. *Hamilton,* 459 A.2d 1060 (D.C. App. 1983); *Ogle* v. *Fuiten,* 112 Ill. App. 3d 1048, 445 N.E.2d 1344 (1983), aff'd, 102 Ill. 2d 356, 466 N.E.2d 224 (1984); failed to supervise the proper execution of a will; see, e.g., *Licata* v. *Spector,* 26 Conn. Sup. 378, 225 A.2d 28 (1966); *Succession of Killingsworth,* 292 So. 2d 536 (La. 1973); *Auric* v. *Continental Casualty Co.,* 111 Wis. 2d 507, 331 N.W.2d 325 (1983); or failed to advise a client of the consequences of not revising a will; see, e.g., *McAbee* v. *Edwards,* 340 So. 2d 1167 (Fla. App. 1976); or of using one type of estate planning instrument. See, e.g., *Bucquet* v. *Livingston,* 57 Cal. App. 3d 914, 129 Cal. Rptr. 514 (1976). The question before us is whether such liability should be further expanded to encompass negligent delay in completing and furnishing estate planning documents for execution by the client.

Determining when attorneys should be held liable to parties with whom they are not in privity is a question of public policy. 3 F. Harper, F. James & O. Gray, supra, § 18.6, p. 730. In addressing this issue, courts have looked principally to whether the primary or direct purpose of the transaction was to benefit the third party. See, e.g., *Needham* v. *Hamilton,* supra, 1062–63; *Pelham* v. *Griesheimer,* 92 Ill. 2d 13, 21, 440 N.E.2d 96 (1982). Additional factors considered have included the foreseeability of harm, the proximity of the injury

to the conduct complained of, the policy of preventing future harm and the burden on the legal profession that would result from the imposition of liability. *Lucas* v. *Hamm*, supra, 588; *Auric* v. *Continental Casualty Co.,* supra, 514. Courts have refrained from imposing liability when such liability had the potential of interfering with the ethical obligations owed by an attorney to his or her client. See, e.g., *Parnell* v. *Smart,* 66 Cal. App. 3d 833, 837–38, 136 Cal. Rptr. 246 (1977) (in adversary proceedings, attorney for insurance carrier owed no duty to insured); *Pelham* v. *Griesheimer,* supra, 22–23 (attorney representing parent in custody dispute owed no duty to child); *Clagett* v. *Dacy,* 47 Md. App. 23, 29–30, 420 A.2d 1285 (1980) (attorneys conducting foreclosure sale owed no duty to highest bidders); see also R. Mallen & V. Levit, supra, § 80, p. 158. We conclude that the imposition of liability to third parties for negligent delay in the execution of estate planning documents would not comport with a lawyer's duty of undivided loyalty to the client.

A central dimension of the attorney-client relationship is the attorney's duty of "[e]ntire devotion to the interest of the client." G. Sharswood, An Essay on Professional Ethics (5th Ed. 1896) p. 78; see Rules of Professional Conduct 1.7; and see *Mozzochi* v. *Beck,* supra, 497. This obligation would be undermined were an attorney to be held liable to third parties if, due to the attorney's delay, the testator did not have an opportunity to execute estate planning documents prior to death. Imposition of liability would create an incentive for an attorney to exert pressure on a client to complete and execute estate planning documents summarily. Fear of liability to potential third party beneficiaries would contravene the attorney's primary responsibility to ensure that the proposed estate plan effectuates the client's wishes and that the client understands the available options and the legal and practical implica-

tions of whatever course of action is ultimately chosen. These potential conflicts of interest are especially significant in the context of the final disposition of a client's estate, where the testator's testamentary capacity and the absence of undue influence are often central issues. See, e.g., *Stanton* v. *Grigley,* 177 Conn. 558, 564–65, 418 A.2d 923 (1979).

The facts of this case illustrate the serious potential for conflicts of interest inherent in such situations. The record suggests that, in making provisions for the final disposition of his estate, the decedent had two separate concerns: that his estate pass to certain of his relatives; and that it not go through probate. To accommodate both concerns, he chose to transfer his property through a relatively complex trust plan rather than by executing a simple will. Under one theory of liability espoused by the plaintiffs, when Stingle became aware that the decedent was gravely ill, she should have abandoned completion of the trust instruments in order to furnish a will for the decedent to sign. Thus, according to them, in order to fulfill her duty to the plaintiffs, she was required to encourage the decedent to forego his desire to avoid probate. The record further discloses that, approximately one week before his death, the decedent made some changes in the distribution of his estate, in particular omitting one brother whom he had previously included. Had Stingle been concerned about liability to the intended beneficiaries of the estate, she might have resisted making the requested changes, fearing that the ensuing delay would make her vulnerable to a claim of malpractice. Finally, a rush to execution of the estate plan would have put pressure on Stingle to urge the decedent to sign whatever documents she had had time to prepare without further inquiry into the effect of his illness on his testamentary capacity at the time of their execution. Prophylactic principles of public policy counsel against rules of liability that promote such conflicts of interest.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendants in accordance with their motions for a directed verdict.

In this opinion the other justices concurred.