[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO STRIKE #124
The thirteen plaintiffs in this action are: Terremar, Inc. (f/k/a Terrence Cooke Company, Inc.); Terrence M. Cooke; and eleven named condominium associations. (See Amended Complaint, Parties paras. 1-13). The defendants are: Ginsburg Ginsberg, a partnership engaged in the practice of law; Robert A. Ginsburg and Kenneth S. Ginsberg, members of that partnership; and Alan Link, associated with Ginsburg Ginsberg. (See Amended Complaint, Parties, paras. 14-16). The amended complaint dated November 30, 1990 is comprised of nine counts.
The following facts are alleged in the amended complaint. Philip F. Wieler II ("Wieler") is the sole shareholder and president of the N.W. Group, Inc., which prior to the spring of 1989 had been engaged in the property management business for several years and served as managing agent for several properties in the New Haven area. (Because Wieler and the N.W. Group are insolvent and involved in bankruptcy proceedings, they have not been named as defendants in this action). In connection with serving as management agent, N.W. Group had accounts at several banks in the New Haven area in which it held funds owned by the properties it managed. These accounts are used to collect rents and to pay bills for the properties they manage.
The plaintiffs allege that by the spring of 1989, N.W. Group CT Page 3163 and Wieler were experiencing severe financial difficulties and were defendants in various lawsuits including one in which Robert A. Ginsburg was directly involved. N.W. Group and Wieler allegedly converted funds owned by the properties it managed by using the funds from the New Haven properties' accounts to cover overdrafts in the N.W. trustee account. In the spring of 1989, when N.W. Group and Wieler were no longer able to cover these overdrafts, they began searching for a new source of funds.
The complaint further alleges that N.W. Group and Wieler knew the plaintiff, Terremar, Inc., was actively engaged in the property management business and controlled approximately two million dollars for the properties it managed. On or about July 5, 1989, the plaintiff, Terremer, Inc., sold substantially all of its assets to N.W. Group including all its rights and liabilities under certain property management contracts. The defendants represented N.W. Group and Wieler in the sale. In the course of the sale and prior negotiations, defendants made certain representations concerning N.W. Group and Wieler to Terremar, Inc. and Terrence Cooke, including those contained in a letter dated July 5, 1989, signed by Alan Link. (See Exhibit "A", Opinion of Purchaser's Counsel).
In count one, the plaintiffs allege that these representations made to Terremar, Inc. and Terrence Cooke were false, that defendants knew or should have known that the representations were false, that the representations were made to induce Terremar, Inc. and Cooke to enter into the agreement with N.W. Group and Wieler and as a result of those misrepresentations, Terremar, Inc. has suffered financial injury.
Count two incorporates count one and alleges a CUTPA violation, Conn. Gen. Stat. 42-110a et seq. Count three alleges that the representations contained in the July 5, 1989 letter were made negligently.
In the fourth count, the first count is partially incorporated and further alleges that prior to the sale, the defendants knew that Terremar, Inc. served as managing agent for the principals who are eleven named plaintiff-condominium associations. The defendants allegedly knew that in connection with its duties as managing agent, Terremar, Inc. was obligated to maintain bank accounts on behalf of the condominium associations for the purpose of collecting rents and common charges and paying all approved expenses. In reliance on the defendants' representations, Terremar, Inc. assigned its management contracts to the N.W. Group and delegated its agent and fiduciary obligations regarding the bank accounts owned by the condominium associations containing approximately $2 million. The plaintiff-condominium associations were informed of the change CT Page 3164 in July, 1989.
From July to November 1989, N.W. Group and Wieler allegedly converted $700,000.00 from these bank accounts and as a result, the plaintiff-condominium associations have suffered financial injury. The fifth count incorporates the first and fourth counts and alleges that the actions and misrepresentations of the defendants were unfair and deceptive in violation of CUTPA. The sixth count alleges negligent misrepresentations as to the plaintiff-condominium associations.
In the seventh count, the first count is partially incorporated and further alleges that as part of the sale, Terrence Cooke accepted a note executed by N.W. Group and personally guaranteed by Wieler in exchange for his agreement not to compete with N.W. Group. Cooke agreed to accept that note based upon the defendants' representations and in reliance on these representations, Cooke has suffered financial injury. The eighth and ninth counts incorporate counts one and seven and allege a CUTPA violation and negligent misrepresentations, respectively.
The original complaint dated January 12, 1990 included only Terremar, Inc. and Terrence Cooke as party plaintiffs. Via decision dated December 26, 1990, (No. 120), Judge Berdon granted the plaintiffs' motion to add the eleven condominium associations as party plaintiffs. The defendants are now moving to strike the plaintiffs' amended complaint on the ground of misjoinder of parties pursuant to Conn. Practice Bk. 152(4). The defendants have filed a memorandum of law in support of their motion and the plaintiffs have filed a memorandum in opposition.
The function of a motion to strike is to challenge the legal sufficiency of the allegations as set forth in the pleadings. Ferryman v. Groton, 212 Conn. 138, 142 (1989); Conn. Practice Bk. 152 (rev'd to 1978, as updated to July, 1990). In determining whether a motion to strike should be granted, the issue is whether if the facts alleged are taken to be true, the allegations provide a cause of action. King v. Board of Education, 195 Conn. 90, 93
(1985). The court must construe the facts alleged in the complaint in the manner most favorable to the plaintiff. Rowe v. Godou, 209 Conn. 273, 278 (1988). Pursuant to Conn. Practice Bk. 198 (rev'd to 1978, as updated to July, 1990), "[t]he exclusive remedy for misjoinder of parties is by motion to strike."
In the memorandum of law in support of the motion to strike, the defendants contend that each group of plaintiffs (Terremer. Inc., the condominium associations, and Terrence Cooke) alleges that they are the third party beneficiaries of a contract for legal services between the Ginsburg Ginsberg law firm and N.W. CT Page 3165 Group and that since there can only be one primary or direct purpose of the transaction, only one of these parties can be a third party beneficiary. The defendants relying on Krawczyk v. Stingle, 208 Conn. 239 (1988), argue that because only one of these parties can seek to establish that the direct and primary purpose of the transaction between N.W. Group and the defendant law firm in issuing the July 5, 1989, opinion letter was to provide a benefit to one of those plaintiffs, the amended complaint must be stricken as the parties are misjoined pursuant to Conn. Practice Bk. 198 and 152(4).
The plaintiffs in the memorandum in opposition counter that the defendants rather than discussing the issue of misjoinder argue the legal sufficiency of the plaintiffs' claims. The plaintiffs argue that pursuant to the Conn. Practice Bk. 152(4) cited by the defendants, a motion to strike may be based on "the joining of two or more causes of action which cannot properly be united in one complaint. . . ." The plaintiffs contend that the transactional theory set forth in Conn. Practice Bk. 134 allows the joinder of causes of actions which arise out of transactions connected with the same subject matter and the cause of action asserted by the condominium associations arose out of the same transaction as that affecting the other plaintiffs, that is the wrongful drafting of an opinion letter in conjunction with the sale of Terremar, Inc.
Furthermore, the plaintiffs contend that the liability of the defendants to the plaintiff-condominium associations arises because of the principal agent relationship between the condominium associations as the principals and Terremar, Inc. as the agent and that the defendants knew that Terremar, Inc. was not acting only on their own behalf, but also on behalf of the associations as their managing agent. The plaintiffs argue that the defendants have mischaracterized the claim as one based on third party beneficiary status and, therefore, the Krawczyk case is not controlling.
In Karwczyk v. Stingle, 208 Conn. 239 (1988), the court addressed the issue of whether an attorney's negligent failure to arrange for timely execution of estate planning documents permits the interested beneficiaries to pursue a cause of action for legal malpractice. Id. at 240. Generally, attorneys are not liable to persons other than their clients, with whom they are in privity, for the negligent rendering of services unless the third party can demonstrate that he or she was the intended or foreseeable beneficiary of the attorney's services. Id. at 244. Courts have looked principally to whether the primary or direct purpose of the transaction was to benefit the third party. Id. at 245. Other factors the courts have considered include foreseeability of harm, the proximity of the injury to the conduct complained of, the CT Page 3166 policy of preventing future harm and the burden on the legal profession that would result from the imposition of liability. Id. at 245-46. Weighing all these factors, the court in Krawczyk found that attorney's duty of undivided loyalty to the client was paramount and the court held that the trial court should have granted the defendant attorney's motion for a directed verdict. Id. at 247.
Assuming arguendo defendants' rationale that the plaintiff-condominium associations must establish status as third party beneficiaries, weighing the factors espoused in Krawczyk, the court concludes that the plaintiffs have made sufficient allegations establishing that status so that they should be allowed to remain parties in the suit.
In count four, the plaintiffs allege that the defendants knew that Terremar, Inc. served as managing agent for the principals who are the condominium associations. "An essential ingredient of agency is that the agent is doing something at the behest and for the benefit of the principal." Beckenstein v. Potter Carrier, Inc., 191 Conn. 120, 133 (1983). The court concludes that the primary purpose of the transaction, that is the opinion letter drafter by the attorneys to Terremar, Inc., was to benefit the third parties including the principals plaintiff-condominium associations. Also as disclosed principals, it was foreseeable that the condominium associations would be harmed. Furthermore, the opinion letters do not constitute advice to the client, but rather were written for use by third parties. See Vereins-Und Westbank, A.G. v. Carter, 691 F. Sup. 704, 715
(S.D.N.Y. 1988) (Court applied the Ultramares doctrine to lawyers making the attorneys liable for negligent misstatements in opinion letters to parties not in contractual privity with attorneys). Therefore, the attorney's duty of undivided loyalty to the client is not being compromised.
Moreover, the pleadings have alleged sufficient facts supporting a cause of action in tort for misrepresentation as to all the plaintiffs. The governing principles for negligent misrepresentation are set forth in 552 of the Restatement Second of Torts (1979):
 552 Information Negligently Supplied for the Guidance of Others
 (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for CT Page 3167 pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care of competence in obtaining or communicating the information.
 (2) Except as stated in Subsection (3), the liability stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
 (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends-to supply it; and
 (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
See D'Ulisse-Cupo v. Board of Directors of Notre Dame High School,202 Conn. 206, 217-18 (1987). Since the plaintiff condominium associations fall under the limited group of persons as contemplated under 552(2)(a) above, these plaintiffs have sufficiently alleged facts to support a cause of action for misrepresentation.
In sum, although the ground stated in the motion to strike is based on misjoinder of parties, the defendants in the memorandum argue legal insufficiency of the claim as to the plaintiff-condominium associations. On either of these grounds, the motion to strike the amended complaint is denied permitting plaintiff-condominium associations to remain parties in the suit.
DONALD T. DORSEY, JUDGE