[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, 1800 Investors, filed a three-count second revised complaint on August 3, 1994 against the defendants, Bruce Elstein and Simko Elstein, P.C. The plaintiff alleges the following facts. On January 28, 1988, Ramberto and Marie Villegas (Villegas) executed a mortgage deed granting Matteo Young (Young), Otha Brown, Jr. and Evelyn Brown (Browns) each a one-third interest in property located at 208 Flax Hill Road, Unit 6, South Norwalk. The Browns quit-claimed their rights in the mortgage to Young on February 17, 1988. The quit-claim deed was recorded on March 18, 1988. On February 23, 1988 Young assigned all his rights in the mortgage to the plaintiff through an assignment of mortgage recorded on February 24, 1988, making the plaintiff the sole owner of the mortgage. After the assignment, Villegas made payments due to the plaintiff.
The defendants represented the Fairfield Lumber Supply CT Page 8655 Company (Fairfield Lumber) in an action against Dantree Construction, Inc., Elena Young and Matteo Young. To secure a possible future judgment, the defendants filed a writ of attachment and garnishment of mortgage in June, 1988. On January 24, 1989, the defendants were awarded a judgment against Dantree Construction, Inc., Elena Young and Matteo Young, and a judgment lien of real estate and mortgage was recorded on April 24, 1989. After receiving a judgment, the defendants directed Villegas to make all further payments under the mortgage to the defendants on behalf of Fairfield Lumber, without notifying the plaintiff of the garnishment and lien on the mortgage. On or about May 1, 1990, Villegas stopped making mortgage payments to the plaintiff and began paying the defendants on behalf of Fairfield Lumber.
The plaintiff notified Villegas of their default on September 24, 1990. On October 26, 1990, the defendants notified the plaintiff of the garnishment and mortgage lien and of the fact that for five months Villegas had been making mortgage payments to the defendants on behalf of their client. Despite repeated demands, the defendants continued to accept payments and have not returned any of the mortgage payments collected from Villegas. The plaintiff alleges that the actions of the defendants constitute conversion (count one), continuing conversion (count two) and a violation of General Statutes § 42-110b et seq., the Connecticut Unfair Trade Practices Act (CUTPA) (count three).
On March 19, 1998, the defendants filed a motion for summary judgment on the following grounds: (1) the defendants are not liable to the plaintiff since they are attorneys who represent a client with an interest adverse to the plaintiff; (2) the money received by the defendants' client from Villegas is not appropriately the subject of a conversion action; (3) the defendants never asserted an ownership interest over the funds; (4) the plaintiff owns only 1/3 of the mortgage because the Young assignment was held in escrow; and (5) any payments made by Villegas were not converted since such payments did not reduce the mortgage debt. The plaintiff filed an objection to the motion for summary judgment on April 30, 1998, arguing that there are material issues of fact in dispute which prevent the granting of the motion.
"Practice Book § 384 [now Practice Book (1998 Rev.) § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that CT Page 8656 the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) HertzCorp. v. Federal Ins. Co., 245 Conn. 374, 380-81, 671 A.2d 389
(1998).
The defendants argue that, generally, opposing counsel is not liable to the adverse party. The defendants contend that they represented the interests of their client only, and never represented the plaintiff. Therefore, the plaintiff may not sue the defendants for representing their client.
The plaintiff contends that at the time the plaintiff was the sole owner of the mortgage, the defendants, representing Fairfield Lumber against Dantree, Elena Young and Matteo Young, had no interest which was adverse to the plaintiff. The plaintiff further contends that a careful title search would have revealed that Young had assigned his interest in the Villegas mortgage to the plaintiff.
"Determining when attorneys should be held liable to parties with whom they are not in privity is a question of public policy. . . . In addressing this issue, courts have looked principally to whether the primary or direct purpose of the transaction was to benefit the third party. . . . Additional factors considered have included the foreseeability of harm, the proximity of the injury to the conduct complained of, the policy of preventing future harm and the burden on the legal profession that would result from the imposition of liability. . . . Courts have refrained from imposing liability when such liability had the potential of interfering with the ethical obligations owed by an attorney to his or her client." (Citations omitted.) Krawczyk v. Stingle, 208 Conn. 239, 245-46,543 A.2d 733 (1988). "Providing a private cause of action under CUTPA to a supposedly aggrieved party for the actions of his or her opponent's attorney would stand the attorney-client relationship on its head and would compromise an attorney's duty of undivided loyalty to his or her client and thwart the exercise of the attorney's independent professional judgment on his or her CT Page 8657 client's behalf." Jackson v. R. G. Whipple, Inc., 225 Conn. 705,727, 627 A.2d 374 (1993).
Whether at the time of the alleged conversion the defendants and the plaintiff were adverse parties presents a question of material fact which cannot be resolved by way of a motion for summary judgment. At the time of the conversion, the plaintiff was at least a partial owner of the Villegas mortgage, owing to the earlier assignment of Young's interest to the plaintiff, but was not directly involved in the garnishment action. Even assuming that the plaintiff and Fairfield Lumber were adverse parties at the time of the alleged conversion, whether the plaintiff may bring a cause of action against the defendants as the attorneys for Fairfield Lumber for conversion depends on many factual determinations, which are inappropriate to make in the context of a motion for summary judgment. Accordingly, the defendants' motion for summary judgment may not be granted on this ground.
The defendants argue that where money has been held to be the proper subject of a conversion action, courts have determined that the money was in the possession and control of the party charged with conversion. The defendants argue that, in this present case, the funds which Villegas was directed to pay to Fairfield Lumber were never in the defendants' control or possession.
The plaintiff argues that the tort of conversion has been committed if the defendants have tampered with the chattel in derogation of the lights of the rightful owner or possessor. The plaintiff contends that it was the rightful owner of the Villegas mortgage and that the direction by the defendants to Villegas to pay over mortgage payments on behalf of Fairfield Lumber interfered with the plaintiff's right to collect the debt under the mortgage.
"Conversion is usually defined to be an unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights. . . . It is some unauthorized act which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and exercise of the powers of the owner to his harm. The essence of the wrong is that the property rights of the plaintiff have been dealt with in a manner adverse to him, inconsistent with his right of dominion and to his harm." CT Page 8658 (Internal quotation marks omitted.) Falker v. Samperi,190 Conn. 412, 419-20, 461 A.2d 681 (1983). "Money can clearly be subject to conversion." Omar v. Mezvinsky, 13 Conn. App. 533, 536,537 A.2d 1039, cert. denied, 208 Conn. 803, 545 A.2d 1101 (1988). Although the defendants attempt to distinguish Omar on its facts, they do not point to any cases which hold that money can only be the subject of conversion in certain factual contexts. The plaintiff has pleaded that it has been deprived of its right to the Villegas mortgage payments due to the defendants' wrongful actions. Because money may be the subject of a conversion action, an action for conversion may lie here, and the defendants' motion for summary judgment must be denied.
The defendants claim that they never asserted ownership over the funds which were paid by Villegas to Fairfield Lumber, and that the funds remained the property of Fairfield Lumber at all times. The defendants argue that their subsequent removal of funds in the form of attorneys' fees when Fairfield Lumber filed for voluntary chapter eleven bankruptcy does not constitute the alleged conversion. The defendants claim that the conversion complained of is their direction to Villegas to make mortgage payments to them on behalf of Fairfield Lumber as part of the garnishment action against Young.[1] The plaintiff contends that the defendants did assert an ownership interest over the mortgage payments, as evidenced by the fact that eventually the funds were paid out to the defendants in the form of attorney's fees.
In State v. Angelo, 39 Conn. App. 709, 667 A.2d 81 (1995), cert. denied, 236 Conn. 901, 670 A.2d 322 (1996), the defendant attorney was given several written notices of the state's lien against proceeds of his client's cause of action. Subsequently, the defendant settled the client's claims without informing the state. Id. The court held that the action of the defendant in disbursing the funds in disregard of the state's lien constituted a conversion. Id. Here, the defendants allegedly disbursed funds — to themselves — in disregard of an arguably valid claim on the funds.
Neither party here has submitted documentary evidence indicating what payments were made out of Fairfield Lumber's account before or during the bankruptcy. There are no evidentiary documents indicating whether the defendants instructed Fairfield Lumber to make payments out of those funds to the defendants or other creditors. Therefore, a genuine issue of material fact CT Page 8659 exists as to whether the defendants exercised any control or possession over the trust account containing the mortgage payments. Accordingly, the motion for summary judgment should be denied.
The defendants contend that even if the plaintiff has some ownership in the Villegas mortgage, that ownership amounts to only a 1/3 interest. The defendants contend that the Browns' quit-claim deed was dated February 17, 1988 and recorded on March 18, 1988, but that the deed was not delivered until March 3, 1988. Young recorded his assignment of the Villegas mortgage on February 24, 1988, and the assignment does not make reference to the quit-claim. The defendants have submitted an affidavit of the Browns' attorney, who attests the Browns agreed to quit-claim their interest in the Villegas mortgage to Young in consideration for $15,000, and that after the Browns signed the quit-claim deed, it was held in escrow until Young paid the $15,000. The plaintiff argues that upon satisfaction of the condition (payment by Young of $15,000), delivery became operative not on the date of satisfaction, but on the date of original delivery.
Although the defendants have filed an affidavit explaining the surrounding circumstances of the quit-claim closing, determining why there was a delay in passing title to Young raises questions concerning the intent of the Browns. Accordingly, the motion for summary judgement should be denied. See Picataggio v. Romeo, 36 Conn. App. 791, 794, 654 A.2d 382
(1995) (question of intent raises issue of material fact which cannot be decided on motion for summary judgment).
The defendants also claim that the plaintiff had no interest in the Villegas' bank funds. The defendants contend that if the plaintiff is correct in its assertion that the plaintiff was the rightful owner of the Villegas mortgage, then the payments made by Villegas to Fairfield Lumber did not reduce the balance due to the plaintiff. Therefore, the defendants argue, the plaintiffs have suffered no harm as a result of the alleged conversion. The plaintiff argues that it had specific rights to the mortgage and payments thereunder.
The parties seem to be arguing over whether the defendants' actions legally caused the plaintiff's damages. In order to resolve the causation issue, however, ownership of the underlying mortgage must be established. As previously discussed, ownership of the mortgage at the time of the garnishment action giving CT Page 8660 rise to the alleged conversion is disputed. Accordingly, the motion for summary judgment is denied.
So Ordered.
Dated at Stamford, Connecticut, this 14th day of August, 1998.
William B. Lewis, Judge