******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MULLINS, C. J., with whom ALEXANDER and D'AURIA, Js., join, concurring in part and dissenting in part. This court has been clear that "[a] central dimension of the attorney-client relationship is the attorney's duty of [e]ntire devotion to the interest of the client." (Internal quotation marks omitted.) *Krawczyk* v. *Stingle*, 208 Conn. 239, 246, 543 A.2d 733 (1988). As a result, we have followed the general rule that "attorneys are not liable to persons other than their clients for the negligent rendering of services." Id., 244. Connecticut appellate courts, however, have recognized two narrow exceptions pursuant to which third-party beneficiaries may bring a claim of professional negligence for an attorney's errors in (1) drafting a will, or (2) executing a will. See, e.g., id., 245; *Stowe* v. *Smith*, 184 Conn. 194, 198–99, 441 A.2d 81 (1981); *Leavenworth* v. *Mathes*, 38 Conn. App. 476, 479–80, 661 A.2d 632 (1995). Those courts have always been cautious in expanding those exceptions. See, e.g., *Krawczyk* v. *Stingle*, supra, 246 (declining to permit imposition of liability on attorney when third-party beneficiaries claimed that attorney negligently failed to arrange for timely execution of estate planning documents); *Leavenworth* v. *Mathes*, supra, 479–81 (concluding that third-party beneficiaries could not bring professional negligence claim that was based on "the proposition that an attorney owes a duty to the beneficiaries [of a will] to ensure the existence of testamentary assets when drafting the instrument").

I agree with the majority that the professional negligence claim of the plaintiffs Emma Wisniewski and Madelyn Wisniewski, two grandchildren of the decedent, Edward Wisniewski, and the plaintiff Barbara Saccardo, the decedent's friend;[1] see footnote 1 of the majority opinion; does not fit within either of the pre-

---

[1] Hereinafter, all references to the plaintiffs are to Emma Wisniewski, Madelyn Wisniewski, and Saccardo.

viously recognized narrow exceptions to privity set forth in *Stowe* v. *Smith*, supra, 184 Conn. 198–99, and reaffirmed in *Krawczyk* v. *Stingle*, supra, 208 Conn. 245. See part I of the majority opinion. Specifically, I agree that the plaintiffs did not allege an error in the drafting or execution of the will. Because neither of these exceptions is satisfied here, I would not go any further.

Unlike the majority, I do not find the circumstances of this case sufficiently compelling to warrant an expansion of the narrow exceptions to the privity requirement. Indeed, "imposing [third-party] liability of the kind sought in the present case remains the exception rather than the rule"; *Mendillo* v. *Board of Education*, 246 Conn. 456, 481–82, 717 A.2d 1177 (1998), overruled in part on other grounds by *Campos* v. *Coleman*, 319 Conn. 36, 123 A.3d 854 (2015); and this court has been reluctant "to recognize causes of action in tort based on [third-party] liability . . . in the absence of satisfaction of a special policy inquiry . . . ." *Mendillo* v. *Board of Education*, supra, 482. Accordingly, this court "must start from the presumption that no such liability will be imposed [in the absence of] satisfaction of a special policy inquiry." (Internal quotation marks omitted.) *Mueller* v. *Tepler*, 312 Conn. 631, 656, 95 A.3d 1011 (2014).

With this in mind, and in light of the fact that this court has already recognized some narrow exceptions in the estate planning context, I do not see a compelling reason to recognize yet another exception under the facts of the present case. As a result, I disagree with the majority's conclusion that an intended beneficiary of a will has standing to bring a professional negligence claim that is based solely on an attorney's alleged failure to advise a client that the proceeds from a security account cannot transfer through the will unless those proceeds are made a testamentary asset. See part I of the majority opinion. Therefore, I respectfully dissent

from part I of the majority opinion, and, because I conclude that the plaintiffs do not have standing, I concur in the result of part II of the majority opinion.

The majority rightly points out that this court must "consider whether the plaintiffs have standing only on the basis of the facts alleged in the . . . complaint, which [this court] take[s] as true and construe[s] in the plaintiffs' favor. See, e.g., *Samelko* v. *Kingstone Ins. Co.*, [329 Conn. 249, 255–56, 184 A.3d 741 (2018)]." Part I of the majority opinion. The two main allegations at issue are that the named defendant, Anthony J. Palermino, an attorney,[2] had improperly advised the decedent that "nothing further was needed to ensure the distribution [of] the stock assets [according to the decedent's wishes] other than executing the will" and that the defendant had "breached [the] relevant duty of care by failing to execute [the decedent's] estate plan in accordance with his wishes, including by failing to ensure that the [decedent's] TD Ameritrade [security] account listed the estate as the beneficiary."

It is undisputed that the defendant had a duty to the decedent in the present case. The question before this court is whether public policy considerations compel extending that duty to the third-party beneficiaries.

In *Krawczyk*, this court explained that, "[a]s a general rule, attorneys are not liable to persons other than their clients for the negligent rendering of services." *Krawczyk* v. *Stingle*, supra, 208 Conn. 244. This court acknowledged that some limited exceptions have been recognized. See id., 244–45. The court further explained that "[d]etermining when attorneys should be held liable to parties with whom they are not in privity is a question of public policy . . . [and that] courts have looked principally to whether the primary or direct purpose

---

[2] Hereinafter, all references to the defendant are to the named defendant, Palermino.

of the transaction was to benefit the third party. . . . Additional factors considered have included the foreseeability of harm, the proximity of the injury to the conduct complained of, the policy of preventing future harm and the burden on the legal profession that would result from the imposition of liability." (Citations omitted.) Id., 245–46. I disagree with the majority that "[t]he public policy factors articulated in *Krawczyk* support imposing liability on attorneys for failing to comply with the standard of care with respect to advising their clients regarding the interrelationship between a will and a security account with a beneficiary designation." Part I of the majority opinion.

The majority concludes that the public policy factors support expanding the exceptions because (1) "the primary purpose" of the transaction between the decedent and the defendant was to benefit the plaintiffs and the other intended beneficiaries of the will by transferring the decedent's interest in the TD Ameritrade account to them in equal shares via the will, (2) it was foreseeable that the defendant's failure to advise the decedent regarding the TD Ameritrade account's beneficiary designation would harm the plaintiffs by depriving them of money that they otherwise would have received, and (3) the imposition of liability under the present circumstances would further the policy of preventing future harm by creating an accountability mechanism for a negligent attorney and a means by which injured third parties may recover for their losses, neither of which presently exists. Id. I disagree that the public policy factors weigh in favor of expanding the exceptions to include the imposition of liability on an attorney who fails to advise his or her client under the facts as alleged in the present complaint.

I first note my disagreement with the majority that the plaintiffs have established that "the primary purpose" of the transaction between the decedent and the defendant

was to benefit the plaintiffs and the other intended beneficiaries of the will by transferring the decedent's interest in the TD Ameritrade account to them in equal shares. Id. Although this court must take as true the plaintiffs' allegation that the decedent intended to distribute his interest in the TD Ameritrade account in that manner, there is no allegation in the complaint or evidence anywhere in the record regarding whether the TD Ameritrade account was the largest or only asset to be distributed through the decedent's will, or whether it was one of many assets to be distributed.[3] Accordingly, I cannot agree with the majority that "the primary purpose" of retaining the defendant was to benefit the plaintiffs and the other intended beneficiaries of the will. Id.

My primary concern, however, is the impact of the majority's decision on the attorney-client relationship and the burden on the legal profession that will result. It is well established that "[t]he attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. . . . Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends . . . ." (Citation omitted.) *Upjohn Co.* v. *United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981). A cause of action that imposes liability on attorneys to third parties for failure to advise their client would necessarily intrude on the sanctity of the relationship and privileged communications between attorneys and their clients. This court has long recognized "the unique

---

[3] Although the plaintiffs allege that the TD Ameritrade account was the only stock asset owned by the decedent at the time of his death, the complaint does not contain allegations establishing the significance of the TD Ameritrade account relative to the decedent's other assets, if any.

and personal nature of the relationship between attorney and client and the need to preserve the sanctity of that relationship . . . ." *Gurski* v. *Rosenblum & Filan, LLC*, 276 Conn. 257, 268–69, 885 A.2d 163 (2005); see, e.g., id., 259–60, 280 (concluding that assignment of legal malpractice action to adversary in underlying action was against public policy and therefore unenforceable).

Unlike the exceptions to the privity requirement that appellate courts have previously recognized—errors in drafting and errors in executing—a failure to advise will never be apparent on the face of the will, and imposing liability for a failure to advise will always require the courts and the attorneys who are defending themselves in malpractice actions to invade the attorney-client relationship and to reveal confidential and privileged communications. See, e.g., *Leavenworth* v. *Mathes*, supra, 38 Conn. App. 479–81 (declining to extend attorney's liability to third party when there was no error "on the face of the instrument"). I would conclude that requiring an invasion into the attorney-client relationship causes future harm, rather than avoiding it.

The majority posits that, "[r]ather than serving as a burden, an attorney's duty to third-party beneficiaries to advise their client will incentivize attorneys to give proper legal advice to their clients" and that "recognizing that the beneficiaries have standing to enforce this duty does nothing more than obligate an attorney to competently perform the work they were hired to do on behalf of the client." Part I of the majority opinion. It is not as obvious to me that imposing liability to third parties for failure to advise in a case like the present one is that simple. I certainly do not dispute the benefit and importance of having attorneys give proper legal advice to their clients. However, I see the complications of imposing liability on attorneys in these cases as causing more harm than good. In most circumstances, a

disappointed third-party beneficiary will have no idea whether the advice was given or not. Yet, the beneficiary could conceivably bring a professional negligence action, even if he or she is unaware whether the client was properly advised. The attorney's defense will be complicated by the fact that his or her client is dead and cannot testify about whether proper advice was given. Even if the attorney were to ultimately prevail, that attorney would still be subject to the burdens and costs of the ensuing litigation. An attorney could therefore be incentivized to engage in prophylactic measures such as greater involvement by an intended beneficiary in a client's estate planning process to ensure that the intended beneficiary is privy to the attorney's advice to the client, thereby avoiding exposure to liability.

The majority discounts this concern by noting that "[a]n attorney cannot be held liable if, after being provided with the appropriate legal advice, the client chooses not to follow through by taking actions in accordance with the attorney's advice or, having initially changed the designated beneficiary to conform with the objectives of the will, the client thereafter changes their mind and makes some other beneficiary designation for the security account that is inconsistent with the terms of the will." Id. This misses the point, however. Even in cases in which an attorney is ultimately not liable because the third-party beneficiaries were not able to prove that the attorney had failed to provide appropriate advice to the client, allowing third parties to bring these actions will require the attorney to bear the costs of litigation and to divulge all the confidential and privileged communications between the attorney and client. I would conclude that these costs are too high when attorneys are already incentivized to provide correct and appropriate legal advice through the Rules of Professional Conduct. See, e.g., Rules of Professional Conduct 1.4 (b) and 2.1; see also,

e.g., Rules of Professional Conduct 1.4 and 2.1, commentary.

Recognizing this exception may also do damage to "[a] central dimension of the attorney-client relationship," namely, "the attorney's duty of [e]ntire devotion to the interest of the client." (Internal quotation marks omitted.) *Krawczyk* v. *Stingle*, supra, 208 Conn. 246. If this court holds attorneys liable to third parties for the advice they do or do not provide to their clients, attorneys may become distracted by concerns about this liability and lose the proper focus on the client's interests.

For example, an attorney may decide that it is necessary to inform third-party beneficiaries of the contents of the will during the decedent's lifetime to avoid potential claims. In cases in which there are difficult family dynamics or in which a testator is making an estate planning decision that will be unpopular with those family members who expect to be beneficiaries but are ultimately not included in the will, the attorney's efforts to protect his or her own interests may not be in the client's best interests. I conclude that this would be to the detriment of the "unique degree of trust and confidence" that characterizes the attorney-client relationship. (Internal quotation marks omitted.) *Updike, Kelly & Spellacy, P.C.* v. *Beckett*, 269 Conn. 613, 648 n.28, 850 A.2d 145 (2004). This court has noted that "potential conflicts of interest are especially significant in the context of the final disposition of a client's estate . . . ." *Krawczyk* v. *Stingle*, supra, 208 Conn. 247. In fact, as the defendant notes in his brief, imposing such liability may result in individuals having difficulty obtaining representation in situations in which there may be third-party liability, such as when a potential client wants to disinherit a family member—not an uncommon scenario.

Unlike in cases involving the existing exceptions, which can often be proven on the face of the document itself, every claim under the majority's newly recognized exception would require a trial court to delve deeply into the attorney-client relationship to resolve it. Moreover, creating such liability will lead to situations in which the interests of the attorney in protecting himself or herself from liability will be in direct conflict with drafting a will that comports with the client's wishes. I would accordingly conclude that the burden on the legal profession that would result from the imposition of liability militates against recognizing an exception to the privity requirement for professional negligence claims based on the circumstances of the present case.

The majority asserts that "[t]hese concerns are exaggerated" and that "[n]either the defendant nor the concurring and dissenting opinion provides persuasive support for this generalized concern sufficient to shift the balance of the *Krawczyk* policy factors." Part I of the majority opinion. These contentions are misguided. The majority fails to follow the general rule that attorneys are not liable to third parties for the negligent rendering of services. Instead of starting from the presumption that no such liability will be imposed in the absence of compelling public policy reasons, the majority requires proof as to why this court should not recognize this new exception. This is contrary to our law. See, e.g., *Mueller* v. *Tepler*, supra, 312 Conn. 656. Rather than providing compelling reasons to justify this expansion, the majority reasons that its holding "only minimally expands an attorney's liability to third parties beyond the exception this court already recognized in *Stowe*." Part I of the majority opinion. Regardless of whether the expansion is minimal, it must first be justified by compelling public policy reasons. None is present here.

I further note that the position adopted by the majority was rejected by the Appellate Court in *Leavenworth* v. *Mathes*, supra, 38 Conn. App. 480–81. Although not binding on this court, I would conclude that the Appellate Court's reasoning is instructive. In *Leavenworth*, the Appellate Court upheld the trial court's granting of the defendant's motion for summary judgment on a claim of legal malpractice brought by third-party beneficiaries of a will that was based on "the proposition that an attorney owes a duty to the beneficiaries [of a will] to ensure the existence of testamentary assets when drafting the instrument." Id., 480; see also id., 477, 481. The Appellate Court in *Leavenworth* characterized *Krawczyk* and certain cases from other jurisdictions as involving "claims of malpractice . . . [that] focus on errors in the drafting and execution of the wills." Id., 480. The Appellate Court then concluded that the exception recognized in those cases did not apply to the plaintiffs' claim of professional negligence. See id. The court expressly rejected the plaintiffs' argument that "the defendant had a duty to 'advise' the testatrix about the implications of the conflicting provisions of her will pertaining to the bequests and the device." Id., 481. Finally, the court concluded that there was "no conflict . . . on the face of the instrument" and that "[a]n attorney's obligation to the client is to draft a will in accordance with that client's wishes, having in mind the best interests of that client." Id.

I agree with the Appellate Court's inclination not to recognize an exception to the privity requirement for professional negligence claims in the trusts and estates context outside of the preparation and execution of wills. I do not believe the present case warrants deviation from this position. For the foregoing reasons, I respectfully dissent from part I of the majority opinion.