McHugh, J.
I. BACKGROUND
Plaintiffs are the current beneficiaries (“Beneficiaries”) and three of the four Trustees (‘Trustees”) of the Mukerjee Family Trust (Trust”). Plaintiffs claim that the defendant, James A. Glynn, Jr. (“Glynn”), an attorney and the fourth trustee of the Trust, is liable to them for his alleged negligence in preparing the Trust for Dilip Mukerjee (“Mukeijee”), who is now deceased. Glynn moves to dismiss the case pursuant to Mass.RCiv.P. 12(b)(6) on grounds (1) that the Trustees lack standing to sue Glynn because, under Massachusetts law, Trustees must act unanimously in order to bring suit and Glynn himself has not consented to commencement of the action; (2) that the Beneficiaries have no claim against Glynn because Glynn owed no professional duty to them; and (3) even if Glynn had a duty to the Beneficiaries, their claims must be dismissed because they are inconsistent with, and would seriously undermine, a lawyer’s duty of undivided loyalty to a client. Plaintiffs, of course, oppose Glynn’s motion.
II. UNDISPUTED FACTS
For purposes of a motion to dismiss all allegations in the complaint and all reasonable inferences drawn from those allegations must be accepted as true. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). With that in mind, it appears that plaintiffs Sudarshan Chatterjee (“Chatterjee”), Amit Baneiji (“Banerji”), Sujeet Mukerjee (“Sujeet”) and Glynn are the four trustees of the Trust. Glynn is an attorney who was retained by Dilip K. Mukerjee to prepare an estate plan designed to provide financial support for Mukeijee’s spouse and children, for his parents and siblings and for the siblings’ issue.
Mukeijee was a physician who immigrated to the United States from India in 1971. He married Jeanne Mukeijee in 1986 and had two children. Between 1971 and 1988, at Mukeijee’s urging, his parents and eight siblings also immigrated to the United States and Mukeijee undertook to support them here. To that end, Mukeijee bought a home for his parents and siblings in Newton (the “Chase Street house”) and paid all the expenses of the house as well as substantial sums for their support.
Mukerjee was Glynn’s client from 1986 until Mukeijee’s death on April 15, 1990. During the period 1986-1990, Mukeijee and Glynn discussed an estate plan for Mukeijee and Mukeijee voiced his desire that this estate plan provide for his parents and siblings. Glynn knew that Mukeijee had substantial assets that would be distributed upon his death and that Mukeijee intended some of those assets (“the Designated Assets"), including the Chase Street house, to benefit his parents and siblings. Inferentially, the complaint alleges that Mukeijee identified the Designated Assets to Glynn.
In January 1990, Mukerjee was diagnosed with cancér. Glynn knew of the diagnosis shortly after it was made. Mukeijee thereafter told Glynn that, upon his death, he wanted one-half of his property to benefit his parents and siblings and the other half to benefit his wife and children. The designated Property was to be part of the half destined for the parents and siblings. Accordingly, Mukeijee instructed Glynn to prepare two trusts; one was to hold all of the property intended to benefit Mukeijee’s parents and siblings and the other was to hold the property intended to benefit Mukerjee’s wife and children.
Mukeijee became ill and was admitted to a hospital on March 9, 1990 where he remained until his death a month later. On March 9, 1990, Glynn supervised Mukeijee’s execution of a deed conveying Mukeijee’s marital home to himself and his wife as joint tenants and Mukerjee’s release of his rights in a 1986 Premarital Agreement between himself and his wife. On March 27,1990 Glynn hired attorney Peter J. Brennan (“Brennan”) to draft a will, the Trust and a trust for Mukeijee’s wife and children.[2] Brennan delivered the will and trust documents to Glynn on April 1, 1990.
On April 4, 1990 Glynn supervised Mukeijee’s execution of the Trust and of a deed transferring ownership of the Chase Street house to the Trustees. Among other things, the Trust listed the Designated Assets as *484 assets it was created to hold. Mukerjee did not, however, execute the will at the same time. On April 6, 1990, Mukeijee lapsed into a coma and died intestate on April 15, 1990. Before his death, Glynn did not tell him that he had to make an inter vivos or testamentary transfer to the Trust in order to insure that the Trust would hold the Designated Assets.
In September 1990, Glynn arranged for partial funding of the Trust with some of the Designated Assets. In August 1991, Mukeijee’s widow, and the administratrix of his estate, filed an action (still pending) against the Trustees seeking to invalidate the Trust on grounds of Mukeijee’s alleged incompetence, undue influence over him and falsification of his signature on the Trust instruments and to rescind Glynn’s partial funding of the Trust.
Against that backdrop, Count I of the Complaint alleges that Glynn breached his contract with Mukerjee by failing to provide him with adequate and timely advice, by failing to prepare the Trust on a timely basis, by failing to advise Mukeijee of the necessity for funding the Trust by inter vivos or testamentary transfers and by failing to record promptly the deed transferring the Chase Street house. Count II alleges that Glynn breached his contract with Mukerjee by failing to obtain Mukerjee’s consent for the retention of Brennan and by failing to investigate the qualifications of Brennan. In Count III, plaintiffs allege Glynn breached his contract with Mukerjee by failing to supervise and arrange the provision of estate planning services to Mukeijee. Count IV claims that Glynn violated a duty of care owed to the Beneficiaries and Count V claims that Glynn violated duties of care to both Mukerjee and to the Beneficiaries by failing to timely decline the representation requested by Mukerjee, to timely gain expertise in the area of estate planning, or to timely refer the matter to a qualified specialist.[3] The Beneficiaries claim that as a result of Glynn’s acts or omissions, they have suffered a loss of the full financial benefit which Mukerjee intended them to receive from the Trust and the Trustees have incurred legal expenses in defending the validity of the Trust which are payable from the Trust.
III. DISCUSSION
A complaint is not subject to dismissal if it could support relief under any theory of law. Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979). In addition, a complaint should not be dismissed simply because it asserts a new theory of liability or improbable facts. Bell v. Mazza, 394 Mass. 176, 183 (1985); New England Insulation Co. v. General Dynamics Corp., 26 Mass.App.Ct. 28, 30 (1988); cf. M. Ascheim Co., Inc. v. Turkanis, 17 Mass.App.Ct. 968, 969 (1983) (rescript).
A. Claims of the Beneficiaries
Glynn asserts that the claims of the Beneficiaries must be dismissed for the simple reason that, as a matter of law, his only client was Mukeijee and he therefore owed no duty to the Beneficiaries. For that proposition, he relies principally on the cases of Logotheti v. Gordon, 414 Mass. 308 (1993), and Spinner v. Nutt, Civil No. 92-5194 (Suffolk Superior Court, Feb. 11, 1993). In response, the Beneficiaries maintain that both cases are distinguishable and that Glynn is liable to them either because they are clearly identified beneficiaries of Mukerjee’s estate plans who were injured by Glynn’s failure to carry out those plans with the requisite care and skill or were third-party beneficiaries of the contract for legal services between Glynn and Mukeijee.
In the present context, it is not clear that there is any meaningful difference between a tort claim for malpractice and a third-party-beneficiaiy claim for breach of contract. In the first place, all actions for legal malpractice are rooted in claims for breach of contract. See McStowe v. Bornstein, 377 Mass. 804, 807-08 (1979); Hendrickson v. Sears, 365 Mass. 83, 86 (1974). Second, at least absent the clearest indications to the contrary, a contract for legal services will not be construed to impose conflicting duties on an attorney.[4] Logotheti v. Gordon, 414 Mass. 308, 312 (1993). In the probate and estate context, the necessity for avoiding conflicts dictates that any duty to persons other than the testator exists only if, and to the extent that, that duty can be discharged by seeing to it that a will or trust naming specific persons effectively conveys to them the property the testator or settlor has designated. See id. Under those circumstances, the Beneficiaries are precisely the kinds of persons who qualify as third-party beneficiaries to a contractual undertaking. See Ayala v. Boston Housing Auth. 404 Mass. 689, 699 (1989); Flattery v. Gregory, 397 Mass. 143, 148 (1986).[5]
In my opinion, therefore, there are circumstances under which the intended beneficiaries of a will or trust may maintain an action against an attorney for negligently providing services to the settlor or testator. The real question in this case thus is whether those claiming to be Beneficiaries of defendant’s contract to provide legal services to Mukerjee ought to be allowed to assert claims for alleged malpractice in providing those services under the circumstances the complaint alleges. The answer is mixed.
The claims the Beneficiaries assert here range from the very narrow and specific, e.g., the claim in Count I that defendant negligently failed to advise Mukerjee that the Trust had to be funded by an inter vivos gift or a testamentary bequest, to the very broad, e.g., the claim in Count III that defendant negligently failed to provide competent estate-planning services to Mukeijee.
*485 In addition to rejecting theories of liability that would saddle an attorney with conflicting duties, cases decided thus far have, with good reason, limited beneficiaries to claims of the first type, i.e., claims involving negligent failure to take some act or provide some advice necessary to carry out the testator’s undoubted intentions. See, e.g., Lucas v. Hamm, 56 Cal.2d 583, 591, 364 P.2d 685, 689 (1961), cert. denied, 368 U.S. 987 (1962) (dictum) (drafting a term that violated the rule against perpetuities); Ogle v. Fuiten, 112 Ill.App.3d 1048, 1052-53, 445 N.E.2d 1344, 1347-48 (1983) (failure to insert a clause that would prevent lapse of the will); Auric v. Continental Cas. Co., 111 Wis.2d 507, 331 N.W.2d 325, 327 (1983) (failing to obtain the signature of a necessary witness). See generally Krawczyk v. Stingle, 208 Conn. 239, 244, 543 A.2d 733, 735 (1988), and cases cited.
As the nature of the alleged omission becomes more complicated, however, decided cases have been less willing to permit those claiming to be beneficiaries to maintain an action. Accordingly, the court in Krawczyk v. Stingle, 208 Conn. 239, 543 A.2d 733 (1988), held that those claiming that they would have been beneficiaries if the defendant had advised the decedent to sign a will and trust before he became so ill that he could not do so could not maintain an action. The court reasoned that recognition of such a claim would effectively leapfrog the question of the decedent’s true intent and, in the process, impose on the attorney potentially conflicting obligations. Id.
Applying principles distilled from the decided cases, I am of the opinion that plaintiffs’ claim that defendant failed to advise Mukerjee to fund the Trust is a claim on which relief can be granted. If the will is valid and the Trust is valid, then plaintiffs clearly are individuals whom Mukerjee intended to benefit. Moreover, the allegedly omitted advice should have been given to Mukerjee and no potential conflict arises from allowing the Beneficiaries to assert a claim for damages flowing from defendant’s alleged failure to give it.[6]
On the other hand, claims that defendant should have declined representation because he was incompetent, claims that he failed to give competent estate-planning advice in particulars other than those described in the last paragraph, claims that he failed to act in “timely” fashion or claims that he failed to have the decedent execute the will when he was competent to do so seem well beyond the reach of any claims the Beneficiaries should be permitted to assert. Recognition of any of those claims is likely to impose on attorneys conflicting obligations. Moreover, recognizing claims of alleged beneficiaries other than beneficiaries designated in a valid will or in a will that fails for want of compliance with a purely “technical” detail runs the very substantial risk of imposing on attorneys liabilities of a type that a great body of law dealing with testamentary disposition is designed to prevent.[7]
The fact that the claims the Beneficiaries have asserted range from the very probably valid to the very probably invalid and the unsettled nature of Massachusetts law on the subject underline the wisdom of proceeding slowly when a motion to dismiss is filed with respect to claims where the law is unsettled. A full record enlivens theory and sharpens analysis. It may be, for example, that, although the claim regarding defendant’s alleged failure to give advice about funding the Trust is a claim of a generally valid type, there are circumstances here that preclude recovery. On the other hand, it may be that although the “timeliness” claims are generally invalid, there are circumstances here that make them valid. In sum, sound decisions concerning where the various claims the Beneficiaries have asserted fall on the spectrum outlined above require a full record and thus should await a motion for summary judgment or a trial.
B. Claims of the Trustees
Glynn seeks dismissal of the action to the extent it is maintained in the name of the Trustees on grounds that (1) all Trustees must agree to commencement of the action and cannot act by majority rule, (2) he is a Trustee and (3) he has not consented to commencement of the action.
As a general matter, Glynn is correct, e.g., Morville v. Fowle, 144 Mass. 109, 113 (1887) (power to sell trust property is not one that could be exercised by two of the trustees without the consent of the third), although one trustee may maintain a suit against a co-trustee for breach of trust even though the co-trustee does not consent to the suit. McMahon v. Krapf, 323 Mass. 118, 129 (1948). Moreover, a Trustee may not use his position as a trustee to his own advantage and the Trust’s detriment. Johnson v. Witkowski, 30 Mass.App.Ct. 697, 705-06 (1991).
Here, the claims the Trustees seek to assert are claims based on defendant’s alleged failure to do things and give advice necessary to make the Trust all that it could be. Plaintiffs have cited no case standing for the proposition that Trustees have a claim against an attorney for negligent creation of the very instrument that gave them their life. Theories under which they could maintain such an action are far from clear. In any event, the Trustees surely have no greater rights against defendant than do the Beneficiaries. For all of those reasons, I am of the opinion that their action must fail.
ORDER
In light of the foregoing, it is hereby ORDERED that Defendant’s Motion to Dismiss the claims of the Beneficiaries is DENIED and Defendant’s Motion to Dismiss the claims of the Trustees is ALLOWED.
*486 (1) Unless otherwise agreed between promisor and prom-isee, a beneficiary of a promise is an intended beneficiaiy if recognition of a right to performance in the beneficiaiy is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary: or (b) the circumstances indicate that the promisee intends to give the beneficiaiy the benefit of the promised performance.

 The complaint alleges that Glynn hired Brennan without Mukeijee’s knowledge or consent.

 Most of the claims are set out in summary form in Complaint OT85(a)-85(K).

 And perhaps not even then unless it is “obvious” that the attorney can adequately discharge the contract-generating responsibilities. See S.J.C. Rule 3:07, DR 5-105(C).

 In that regard, the Restatement (Second) of Contracts §302 (1981) provides in pertinent part:

 Defendant has placed heavy emphasis on an assertion that allowing the Beneficiaries to maintain any aspect of this action would produce a substantial likelihood of serious conflicts of interest not only here but in many estate-planning situations. I do not fully agree. For example, recognizing claims based on an attorney’s failure to carry out, or give advice concerning steps necessary to carry out, the testator’s intent as manifested in a valid will gives rise to virtually no likelihood of conflict at all. It does not matter if different sets of beneficiaries wish the testator had done something different: they have a claim against the attorney only to the extent that his or her negligence resulted in failure of the plan the testator set out in the will. As one seeks to find duties to potential beneficiaries earlier in time in the estate-planning process, however, the likelihood of conflicts increases dramatically. Thus, for example, to recognize claim by an excluded heir-at-law that she would have been a beneficiary if the attorney had given different advice would be to set the stage for a plethora of virtually unresolvable conflicts. See generally Spinner v. Nutt, Civil No. 92-5194, Slip Opinion at 9-11 (Suffolk Superior Court Feb. 11, 1993).

 But see, e.g., Needham v. Hamilton, 459 A.2d 1060 (D.C.App. 1983). The point can be seen most clearly when one considers a claim that the attorney negligently and to the detriment of the beneficiaries failed to insure that the testator was competent to execute a will. That is the reverse of the situation in Logotheti v. Gordon, 414 Mass. 308 (1993), but has some similarities to claims the beneficiaries make here. See Complaint ¶85⅞). If the will is set aside because the testator was incompetent to execute it, then how is one to determine what the competent testator would have done without conducting precisely the kind of inquiry that the requirements for a valid will are, for a whole variety of sound reasons, designed to avoid?