Sisson v. Jankowski, et al.          CV-00-479-M   01/29/02
                   UNITED STATES DISTRICT COURT

                    DISTRICT OF NEW HAMPSHIRE


Thomas K. Sisson,
      Plaintiff

      v.                                  Civil No. 00-479-M
                                          Opinion No. 2002 DNH 014
Shari Jankowski, Esquire,
and Wiggin & Nourie, P.A.,
      Defendants


                         **O R D E R**


      In what might fairly be characterized as a legal malpractice

action, plaintiff alleges that he sustained substantial damages

as a result of defendants' failure to have their client

(plaintiff's brother), Dr. Warren Sisson, execute his will in a

reasonable and timely fashion.  As a result of that alleged

negligence, Dr. Sisson died intestate.  Consequently, says

plaintiff, Dr. Sisson's testamentary intent was not carried out

and, rather than passing entirely to plaintiff, Dr. Sisson's

estate was instead divided evenly among three groups of

beneficiaries (including plaintiff).


      Pending before the court is defendants' renewed motion to

dismiss.  In the alternative, defendants ask the court to certify

the dispositive question of law - whether New Hampshire common law recognizes the cause of action advanced by plaintiff - to the New Hampshire Supreme Court.

## Standard of Review

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is one of limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). In considering a motion to dismiss, the court must accept as true the facts alleged in the complaint and construe all reasonable inferences in favor of the non-moving party. See Bessette v. Avco Financial Services, Inc., 230 F.3d 439, 443 (1st Cir. 2000), cert. denied, 121 S.Ct. 2016 (2001). See also The Dartmouth Review v. Dartmouth College, 889 F.2d 13, 15 (1st Cir. 1989). Dismissal is appropriate only if "it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).

## Background

Accepting the allegations in plaintiff's verified complaint as true, the material facts appear as follows. In December of 1998, Dr. Warren Sisson retained defendants to prepare his will and other estate planning documents (e.g., durable power of attorney, living will, advanced directives for health care, etc.). According to plaintiff, Dr. Sisson informed Attorney Jankowski that he was suffering from bladder and prostate cancer, did not want to die intestate, and, therefore, wished to prepare a will that would pass his entire estate to his brother, the plaintiff. Dr. Sisson is alleged to have said that he was particularly interested in ensuring that none of his estate pass to his other brother, John Sisson, from whom he was estranged.

Attorney Jankowski prepared a will and other estate planning documents in accordance with Dr. Sisson's instructions and, in mid-January, 1999, mailed those documents to him for his review and execution. Dr. Sisson had, however, suffered an injury in his home in mid-January and, therefore, did not receive the documents until January 22, 1999, when a neighbor delivered them to him at a nursing home. Three days later, plaintiff says he

3

contacted Attorney Jankowski to tell her that Dr. Sisson wanted to finalize his estate planning documents quickly because of his deteriorating condition.

On February 1, 1999, Attorney Jankowski and two employees of the defendant law firm, Wiggin & Nourie, P.A., visited Dr. Sisson in the nursing home for the purpose of witnessing his execution of those documents. At that time, Dr. Sisson executed all of the estate planning documents prepared by Attorney Jankowski, except his will. After Jankowski raised an issue regarding whether what had been prepared as the final executable version of the will should nevertheless include provisions for a contingent beneficiary, Dr. Sisson expressed his desire to insert such a clause, thereby providing that his estate would pass to a charity in the event plaintiff predeceased him.

According to plaintiff, by the end of that February 1, 1999, meeting, Dr. Sisson's testamentary intent was clear: the unexecuted will accurately expressed his intent to pass his entire estate to plaintiff, but simply omitted provision for a contingent beneficiary. Nevertheless, rather than (a) modifying

4

the will immediately by inserting a brief, hand-written amendment providing for a contingent beneficiary, or (b) modifying the will at her office and returning later that day to secure Dr. Sisson's signature under the requisite formalities, or (c) advising Dr. Sisson to execute the will as drafted to avoid the risk of dying intestate (which he plainly wished to avoid) and simply arranging to have him subsequently execute a codicil providing for the contingent beneficiary, Attorney Jankowski left a "seriously ill" client without obtaining his signature to the will. Verified Complaint, at para. 4.

Three days later, on February 4, 1999, Attorney Jankowski returned with the revised will. It was not executed, however, because Attorney Jankowski did not believe Dr. Sisson was then competent to execute it. She left without securing his signature and, according to plaintiff, told Dr. Sisson to contact her when he was ready to sign the will.

On February 13, and again on February 15, plaintiff says he spoke with an attorney at Defendant Wiggin & Nourie "to discuss Attorney Jankowski's inaction regarding the will." Verified

Complaint, at paras. 34-35. According to plaintiff, that attorney said he had "spoken to members of his firm about the situation." Id., at para. 35. Nevertheless, plaintiff says that after February 4, 1999, Attorney Jankowski made no attempt to determine whether Dr. Sisson had regained sufficient testamentary capacity to execute his will.

On February 16, 1999, Dr. Sisson died intestate. As a consequence, his $2,000,000 estate did not pass entirely to plaintiff, as Dr. Sisson had intended. Instead, it was divided among plaintiff, Dr. Sisson's other (estranged) brother, and the children of a third (deceased) brother.

The facts presented in this case are somewhat unique. There is no dispute as to the decedent's testamentary intent: he wanted to avoid dying intestate and wished his entire estate to pass to plaintiff. Nor is there any claim that his intent was frustrated by defendants' having negligently prepared his will. Instead, plaintiff asserts that if defendants had fulfilled their professional and contractual obligations to Dr. Sisson in a reasonable and non-negligent manner, he would not have died

6

intestate. And, says plaintiff, he should be permitted to recover damages against defendants as an intended beneficiary of their relationship with Dr. Sisson.

## Discussion

Defendants say they owed plaintiff no legally cognizable duty of care and, therefore, assert that his complaint fails to state a cause of action under New Hampshire law. Although defendants concede that they would be liable to Dr. Sisson's intended beneficiary if Dr. Sisson had actually executed a will negligently prepared by them and that will failed to effect his testamentary intent, they claim that New Hampshire law does not recognize any cause of action against an attorney (or his or her law firm) for having negligently failed to secure a client's timely execution of a draft will. In other words, defendants say they cannot be held liable (at least not to plaintiff) for alleged negligence that proximately caused their client to die intestate (thereby frustrating the client's obvious desire to avoid such a situation). Accordingly, defendants say plaintiff's claims must be dismissed.

At the core of defendants' argument is the assertion that, as a matter of law, an attorney owes no duty of care to intended beneficiaries of a draft will, unless and until that draft will is executed. To prevail, defendants must demonstrate that there are no circumstances recognized by New Hampshire law, no matter how compelling, under which an attorney might be liable for having proximately caused his or her client's intestacy by failing to secure the client's timely execution of a will. Plaintiff, on the other hand, asserts that New Hampshire law would surely recognize that, under circumstances such as those presented here, an attorney is liable to intended beneficiaries for having negligently failed to have a client execute his or her finalized will in a reasonable and timely fashion.

In Simpson v. Calivas, 139 N.H. 1 (1994), the New Hampshire Supreme Court held that an attorney who drafts a testator's will owes a duty of care to the testator's intended beneficiaries.

> The overwhelming majority of courts that have considered this issue have found that a duty runs from an attorney to an intended beneficiary of a will.

* * *

8

> We agree that although there is no privity between a
> drafting attorney and an intended beneficiary, the
> obvious foreseeability of injury to the beneficiary
> demands an exception to the privity rule.

Id., at 5-6. The court then concluded that, "where, as here, a client has contracted with an attorney to draft a will and the client has identified to whom he wishes his estate to pass, that identified beneficiary may enforce the terms of the contract as a third-party beneficiary." Id., at 7.

Relying heavily on the opinion in Simpson, plaintiff says he is the intended beneficiary of the contract between defendants and Dr. Sisson, pursuant to which defendants agreed to prepare Dr. Sisson's estate planning documents; that Dr. Sisson clearly identified plaintiff as the sole intended beneficiary of his estate; and that defendants' negligence in failing to secure Dr. Sisson's timely execution of his will proximately and foreseeably caused plaintiff to sustain readily identifiable damages for which he is entitled to obtain compensation.

Defendants, on the other hand, insist that the circumstances presented in this case are distinguishable from those in Simpson,

saying the <u>Simpson</u> court "recognized only that an attorney owes a duty to a named beneficiary in an <u>executed</u> will." Defendants' memorandum (document no. 13) at 7 (emphasis in original). Because Dr. Sisson never executed the draft will initially presented by Attorney Jankowski, or the revised version incorporating the contingent beneficiary, defendants assert that neither she nor her law firm owed (or could have breached) any duty to plaintiff. To hold otherwise, argue defendants, would create an unworkable situation in which attorneys would find it necessary to pressure clients to "complete and execute estate planning documents summarily," in contravention of an attorney's "primary responsibility to ensure that the client understands the available options and the legal and practical implications of whatever course of action is ultimately chosen." <u>Id.</u>, at 8 (quoting <u>Krawczyk v. Stingle</u>, 208 Conn. 239, 246-47 (1988)).

In <u>Krawczyk</u>, the Connecticut Supreme Court addressed a situation similar to that presented in this case and observed:

> [C]ourts have held that the intended beneficiary has a cause of action against an attorney who failed to draft a will in conformity with a testator's wishes; failed to supervise the proper execution of a will; or failed to advise a client of the consequences of not revising

10

> a will; or of using one type of estate planning
> instrument.  The question before us is whether such
> liability should be further expanded to encompass
> negligent delay in completing and furnishing estate
> planning documents for execution by the client.

Id., at 245 (citations omitted).  Ultimately, the court concluded

that, "the imposition of liability to third parties for negligent

delay in the execution of estate planning documents would not

comport with a lawyer's duty of undivided loyalty to the client."

Id., at 246.


The Connecticut Supreme Court is not alone in that regard.

Other state courts have agreed that asserted beneficiaries of an

unexecuted will have no viable claims against the decedent's

attorney, notwithstanding the fact that those states, like New

Hampshire, recognize that an intended beneficiary of an executed

will may have a cause of action against the drafting attorney if,

due to the attorney's negligence, the will fails to properly

implement the client's testamentary intent.  See, e.g.,

Chatterjee v. Glynn, 1 Mass. L. Rptr. 483, 1994 WL 879735 at *4

(Mass. Super. 1994) ("[C]laims that [the defendant attorney]

failed to act in a 'timely' fashion or claims that he failed to

have the decedent execute the will when he was competent to do so

11

seem well beyond the reach of any claims the Beneficiaries should be permitted to assert."); Babcock v. Malone, 760 So.2d 1056, 1056-57 (Fla. App. 2000) (concluding that an attorney could not be held liable to intended beneficiaries for having allegedly failed to secure decedent's timely execution of a will).

The majority of courts to confront the issue have concluded that imposing liability to intended beneficiaries of an unexecuted will would interfere with an attorney's obligation of undivided loyalty to his or her client, the testator or testatrix. And, as the Connecticut Supreme Court observed, "[c]ourts have refrained from imposing liability when such liability had the potential of interfering with the ethical obligations owed by an attorney to his or her client." Krawczyk, 208 Conn. at 246. The New Hampshire Supreme Court recently echoed that concern in MacMillan v. Scheffy, __ N.H. __, 2001 WL 1640113 (Dec. 24, 2001), holding that, absent privity, New Hampshire common law does not impose liability upon an attorney to third parties when doing so "would interfere with the undivided loyalty which the attorney owes his client and would

detract from achieving the most advantageous position for his client." Id., at *2.

The Massachusetts Supreme Judicial Court also recently discussed the potential risks associated with imposing liability on attorneys under circumstances such as those presented in this case.

> We have previously noted that "in preparing a will attorneys can have only one client to whom they owe a duty of undivided loyalty." A client who engages an attorney to prepare a will may seem set on a particular plan for the distribution of her estate, as here. It is not uncommon, however, for a client to have a change of heart after reviewing a draft will. Confronting a last will and testament can produce complex psychological demands on a client that may require considerable periods of reflection. An attorney frequently prepares multiple drafts of a will before the client is reconciled to the result. The most simple distributive provisions may be the most difficult for the client to accept. Considerable patience and compassion can be required of attorneys drafting wills, especially where the client seeks guidance through very private and sensitive matters. If a duty arose as to every prospective beneficiary mentioned by the client, the attorney-client relationship would become unduly burdened. Attorneys could find themselves in a quandary whenever the client had a change of mind, and the results would hasten to absurdity. The nature of the attorney-client relationship that arises from the drafting of a will necessitates against a duty arising in favor of prospective beneficiaries.

13

<u>Miller v. Mooney</u>, 431 Mass. 57, 63-64 (2000) (citations omitted).

The reasoning articulated in the opinions cited above, particularly in light of the New Hampshire Supreme Court's recent opinion in <u>MacMillan</u>, is compelling. Ordinarily, then, this court would be inclined to grant defendants' motion to dismiss, predicting that the New Hampshire Supreme Court would, if presented with the issue, conclude that plaintiff's complaint fails to state a viable cause of action. Nevertheless, the court is aware of New Hampshire's long tradition of eschewing strict and inflexible application of the privity rule in favor of a more case specific inquiry into whether the injuries alleged to have been sustained by the plaintiff were a reasonably foreseeable consequence of an attorney's (or other professional's) deviation from professional standards of care. <u>See</u> <u>Simpson</u>, <u>supra</u>. <u>See also</u> <u>Spherex, Inc. v. Alexander Grant & Co.</u>, 122 N.H. 898, 903 (1982) ("Our reluctance to apply the privity rule has extended to allowing a proper plaintiff to recover for mere financial loss resulting from the negligent performance of services.") (citation omitted). Thus, "reasonable foreseeability" has long been a critical factor in the evolution of New Hampshire common law and

14

the court has frequently invoked Chief Justice Cardozo's opinion in Palsgraf v. Long Island R. Co., 248 N.Y. 339, 344, 162 N.E. 99, 100 (1928), for the proposition that the "risk reasonably to be perceived defines the duty to be obeyed." See, e.g., Ianelli v. Burger King Corp., 145 N.H. 190, (2000) ("In large part our definition and application of the legal concepts of duty and foreseeability derive from Chief Justice Cardozo's majority opinion in Palsgraf.). See also Spherex, 122 N.H. at 905; Millis v. Fouts, 144 N.H. 446, 448 (1999); Manchenton v. Auto Leasing Corp., 135 N.H. 298, 304 (1992).

Under the facts alleged in this case, one would be hard pressed to say that the injuries sustained by plaintiff were not a reasonably foreseeable consequence of defendants' allegedly negligent failure to secure Dr. Sisson's timely execution of his will. The key point, however, is whether, in New Hampshire, public policy concerns intervene to systemically block imposition of liability to intended beneficiaries in cases involving negligent delay in procuring the execution of a will.

15

This case is not, however, easily consigned to that category of routine cases in which public policy concerns counsel against imposing liability on an attorney for alleged negligence preceding the execution of a will. Indeed, it is not entirely clear, at least under the facts as alleged in this case, that public policy concerns are directly at odds with imposing the type of liability advocated by plaintiff. To be sure, there are certainly situations in which legitimate public policy concerns weigh against creating an environment in which attorneys are pressured to rush clients when formulating and executing an estate plan. In the circumstances alleged by plaintiff, however, there is perhaps an equally compelling public policy interest in encouraging attorneys to act with diligence and reasonable promptness to ensure that their clients do not die intestate, which, after all, is the very purpose for which the attorneys were retained in the first place. And, importantly, that interest is not universally at odds with those of undisputed intended beneficiaries, who share an interest in seeing that the client does not die intestate contrary to his or her wishes, and that the desired testamentary disposition (assuming it has been

16

demonstrably finalized) is not thwarted due to an attorney's negligence.

Consequently, because the New Hampshire Supreme Court has not addressed the dispositive legal issue, it might: (a) decline to adopt the majority view wholesale and, instead, recognize a limited common law cause of action when an undisputed intended direct beneficiary of a finalized but unexecuted will sustains reasonably foreseeable damages as a proximate result of an attorney's negligent failure to obtain the testator's timely execution of the will; or (b) recognize an exception to the general rule when, as here, it appears that the public policy concerns underlying the absolute bar are not implicated (or, at a minimum, are less compelling) because there is no conflict between at least some of the attorney's obligations to her client (i.e., prepare a will that represents the client's testamentary intent and act reasonably to insure that the client has the opportunity to execute that will in a timely manner to avoid intestacy) and the best interests of the intended beneficiaries of the will (i.e., act reasonably to afford the client an

17

opportunity to avoid dying intestate and to implement his or her desired plan of disposition).

When, in situations such a this, a federal court is called upon to apply state law, it must "take state law as it finds it: 'not as it might conceivably be, some day; nor even as it should be.'" Kassel v. Gannett Co., Inc., 875 F.2d 935, 950 (1st Cir. 1989) (quoting Plummer v. Abbott Laboratories, 568 F.Supp. 920, 927 (D.R.I. 1983)). When state law has been authoritatively interpreted by the state's highest court, this court's role is straightforward: it must apply that law according to its tenor. See Kassel, 875 F.2d at 950. When the signposts are somewhat blurred, the federal court may assume that the state court would adopt an interpretation of state law that is consistent with logic and supported by reasoned authority. See Moores v. Greenberg, 834 F.2d 1105, 1107 n.3 (1st Cir. 1987). However, this court is and should be hesitant to blaze new, previously uncharted state-law trails. Accordingly, when a dispositive legal question is novel and the state's law in the area is unsettled, certification is often appropriate. See Lehman Bros. v. Schein, 416 U.S. 386, 391 (1974); Arizonans for Official

18

English v. Arizona, 520 U.S. 43, 76 (1997).  See also Acadia Ins. Co. v. McNeil, 116 F.3d 599, 605 (1st Cir. 1997).

Expansive reading of New Hampshire's common law, particularly when a novel cause of action potentially implicates substantial public policy concerns, is a realm best occupied by the New Hampshire Supreme Court.  Because that court has yet to address the discrete issue presented in this case, and because it is unclear how it would likely resolve that issue in the context of the facts as pled, the fairest and most prudent course of action at this stage is to certify the question.  Otherwise, the case would either be dismissed (perhaps wrongly) and the Court of Appeals would likely have to revisit the question of certification, or extended and expensive litigation would proceed, perhaps unnecessarily, on a claim of questionable viability.  Neither situation would represent an efficient use of judicial or the litigants' resources.

## Conclusion

Defendants' motion to dismiss or, in the alternative, for certification to the New Hampshire Supreme Court (document no. 13) is granted in part and denied in part. To the extent it seeks certification to the New Hampshire Supreme Court of the legal question presented in this case, the motion is granted. In all other respects, it is denied. Plaintiff's motion to compel (document no. 12) is denied without prejudice to refiling (if appropriate) after the Supreme Court has addressed the certified question.

The court proposes to certify the following question of law to the New Hampshire Supreme Court:

> Whether, under New Hampshire law and the facts as pled, an attorney's negligent failure to arrange for his or her client's timely execution of a will (thereby proximately causing the client to die intestate) gives rise to a viable common law claim against that attorney by an undisputed intended beneficiary of the unexecuted will.

See generally N.H. Supr. Ct. R. 34. If any party objects to the form of the question the court proposes to certify, a written objection, along with suggested alternative language, shall be

20

filed on or before February 22, 2002. The court proposes to submit to the Supreme Court, as its statement of facts, the facts as presented in this order. If any party objects or wishes the court to supplement that statement of facts, that party shall submit an objection and/or proposed statement of supplemental facts by the same date. The parties should, of course, bear in mind that because defendants' pending motion is one to dismiss, the court must assume all properly alleged facts in plaintiff's verified complaint to be true.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

January 29, 2002

cc:  Ronald L. Snow, Esq.
     Andrew D. Dunn, Esq.

21